IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JORGE MEDINA CONCHA            :            CIVIL ACTION
                              :
            v.                :
                              :
ELAINE C. DUKE, et al.        :            NO. 17-5321

MEMORANDUM

Bartle, J.                                      May 15, 2018

        Plaintiff Jorge Medina Concha, a citizen of Peru,
brings this action for review of a decision by the United States
Citizenship and Immigration Services ("USCIS") which denied
Concha's Form I-360 immigration petition under the
Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq.
Before the court is the motion of defendants for judgment on the
administrative record.[1]

                              I

        We begin with the relevant facts of the administrative
record before us.  Concha, as stated above, is a citizen of
Peru.  He entered the United States in 2004 on a tourist visa.
On July 24, 2010, Concha married Iris Janette Baez, a United
States citizen.  Shortly after their marriage, Baez filed a Form

_____

1.  Concha names as defendants: (1) Elaine C. Duke, Acting
Director of the Department of Homeland Security; (2) L. Francis
Cissna, Director of the USCIS; (3) Ron Rosenberg, Chief of the
USCIS Administrative Appeals Unit; (4) Donald Neufield,
Associate Director of the USCIS Service Center Operations; and
(5) Jefferson Beauregard Sessions, U.S. Attorney General.  We
will refer to defendants collectively as "USCIS."

I-130 petition on behalf of Concha to adjust his immigration status.

According to Concha, during the first two years of his marriage "things were going well" and "he felt they were happy." Unfortunately, that happiness ended in August 2012 when Concha discovered his wife in their bed with a woman. Thereafter, Concha also discovered that Baez had lied to him about her finances and her ability to have children. As a result of this betrayal, Concha became depressed and suffered from insomnia and nightmares. Concha moved out of his home with Baez in October 2012.

Thereafter, USCIS officials visited the home Baez and Concha had shared. They discovered that Concha had left, and that the woman had moved into the home with Baez. At USCIS's request, Baez withdrew the Form I-130 she had filed on Concha's behalf.

In April 2013, Concha filed a Form I-360 self-petition seeking classification as an abused spouse of a U.S. citizen under the Violence Against Women Act ("VAWA"). In support of his self-petition, Concha submitted a psychological evaluation by Damaris Torres, a licensed marriage and family therapist. Torres stated that Concha had discovered Baez engaged in an extramarital affair and that Concha had developed depression as a result. Concha also included a second psychological

evaluation by Dr. Mary Ellen McMonigle, a licensed psychologist. McMonigle diagnosed Concha with major depressive disorder and symptoms consistent with post-traumatic stress disorder brought on by his wife's infidelity.

USCIS denied Concha's Form I-360 in a letter from its Vermont Service Center Director dated February 21, 2014. The agency explained that "[m]arital tensions and incompatibilities such as apathy toward the relationship by one party, infidelity or substance abuse of a spouse, which place strains sometimes severe enough to result in a marriage's disintegration, do not by themselves, constitute extreme cruelty" under VAWA. It further explained to Concha "[t]he fact that your spouse was engaged in an affair is an unkind act. However, not every unkind act constitutes extreme cruelty, as that term is defined in U.S. immigration law."

Concha filed a second Form I-360 on March 30, 2015. In support, he submitted a supplemental evaluation by Torres, who opined that "[i]nfidelity is a form of extreme cruelty because it can be as devastating as a physical attack." Torres further stated:

> Infidelity is abuse because the characteristics of the unfaithful are like those of a batterer and the symptoms of the victims are like those of the battered. Infidelity is a complex traumatic form of emotional abuse that causes its victims, isolation, humiliation, danger of sexually

transmitted diseases and can cause
Post-traumatic stress disorder and
depression on its victims.

Torres also reported that Baez had emotionally abused and
manipulated Concha by lying to him about finances and her
willingness to have children.

USCIS denied the second Form I-360 on November 30,
2015. The agency explained: "while USCIS does not discredit
your therapist's finding, the determination of what actions or
behaviors constitute extreme cruelty for immigration purposes
generally differs from the subjective application of the
definition of extreme cruelty for psychological or medical
purposes." It further found that "the fact that [Baez] lost
interest in the marriage and engaged in an affair is not extreme
cruelty for immigration purposes. The actions described by
[Concha] represent a disintegration [of] marriage and
congressional intent did not encompass the mental anguish
generally associated with marital difficulties such as
infidelity."

Concha then appealed the denial of his second Form
I-360 to the USCIS Administrative Appeals Office ("AAO"). See
8 C.F.R. § 103.3. After conducting a de novo review, the AAO
dismissed Concha's appeal because the evidence in the record
"does not demonstrate that [Concha] was subjected to battery or
extreme cruelty." The AAO further stated that his wife's

extramarital affair affected Baez emotionally but did "not demonstrate that [Concha] was the victim of violent acts or an overall pattern of violence, such as sexual abuse, forced prostitution, forceful detention, or other acts or threats of violence amounting to battery or extreme cruelty as defined in 8 C.F.R. § 204.2(c)(1)(vi)."

Concha thereafter filed a motion with the AAO to reconsider its decision and/or to reopen. In support, he submitted a letter from Torres asserting that Baez inflicted "psychological abuse" on Concha by: (1) lying to Concha about her desire to have children and her ability to conceive; (2) lying to Concha about her finances and thereby manipulating Concha to pay for half of her expenses and to buy her a new car; and (3) humiliating Concha by having an affair with a woman. The AAO denied the motion on April 12, 2017. It concluded that the evidence submitted by Concha did "not establish that the lies by [Baez] amount to psychological or sexual abuse or exploitation, or are similar to specific acts of qualifying abuse cited in the regulation, such as acts or threated acts of violence, rape, molestation, incest, or forced prostitution, or actions that were part of an overall pattern of violence." On November 27, 2017, Concha filed the instant action seeking review under the APA.

II

Our review of the USCIS's decision is governed by the APA, 5 U.S.C. § 706. We may only set aside an agency's action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "The scope of review under the 'arbitrary and capricious' standard is 'narrow, and a court is not to substitute its judgment for that of the agency.'" CBS Corp. v. F.C.C., 663 F.3d 122, 137 (3d Cir. 2011) (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)). Generally, an agency's action is arbitrary and capricious only where

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. The reviewing court should not attempt itself to make up for such deficiencies; we may not supply a reasoned basis for the agency's action that the agency itself has not given.

Id. (quoting State Farm, 463 U.S. at 43). We apply the same standard when determining whether an agency's actions constituted an abuse of discretion. See Donovan v. Adams Steel Erection, Inc., 766 F.2d 804, 807 (3d Cir. 1985).

III

    We now turn to an overview of the relevant statutory
and regulatory framework governing Concha's petition.  Under the
Immigration and Nationality Act ("INA"), a United States citizen
who seeks to gain lawful permanent resident status for an alien
spouse must begin the process by filing an I-130 petition with
the USCIS on behalf of that spouse.  8 U.S.C.
§ 1154(a)(1)(A)(i); 8 C.F.R. § 204.1(a)(1).  The alien spouse
for whom the I-130 petition was filed must then submit a Form
I-485 application for adjustment of status.  <u>See</u> 8 U.S.C.
§ 1255(a); 8 C.F.R. § 245.1(a).

    The INA, as amended by the VAWA, provides an exception
to this general procedure for an alien that "has been battered
or has been the subject of extreme cruelty perpetrated by the
alien's spouse or intended spouse."  8 U.S.C.
§ 1154(a)(1)(A)(iii).  In that situation, the aliens may file a
petition on their own behalf, known as a Form I-360, for a
special immigrant classification as an abused spouse of a U.S.
citizen.  <u>Id.</u>  To be eligible for this self-petition, the alien
must establish that he or she:  (1) is the spouse of a citizen
or lawful permanent resident of the United States; (2) is
eligible for immigrant classification based on that
relationship; (3) currently resides in the United States;
(4) has resided in the United States with the citizen or lawful

permanent resident spouse; (5) has been subjected by that spouse to battery or extreme cruelty; (6) is a person of good moral character; (7) would face extreme hardship if deported; and (8) entered into the marriage in good faith.  8 C.F.R. § 204.2(c).  The Attorney General, in turn, has the discretion to adjust the status of an alien VAWA self-petitioner to that of a lawful permanent resident.  See 8 U.S.C. § 1255(a).

The legislative history accompanying VAWA explains that "[t]he purpose of permitting self-petitioning is to prevent the citizen or resident from using the petitioning process as a means to control or abuse an alien spouse."  H.R. Rep. No. 103-395 (1993).  Thus, Congress designed VAWA in part to allow abused alien spouses "to leave their batterers without fearing deportation."  Id.

Federal regulations further define the battery or extreme cruelty necessary to support a Form I-360 self-petition:

> For the purpose of this chapter, the phrase "was battered by or was the subject of extreme cruelty" includes, but is not limited to, being the victim of any act or threatened act of violence, including any forceful detention, which results or threatens to result in physical or mental injury.  Psychological or sexual abuse or exploitation, including rape, molestation, incest (if the victim is a minor), or forced prostitution shall be considered acts of violence.  Other abusive actions may also be acts of violence under certain circumstances, including acts that, in and of themselves, may not initially appear

> violent but that are a part of an overall
> pattern of violence.

8 C.F.R. § 204.2(c)(1)(vi).  The regulation further provides

that "[t]he qualifying abuse must have been committed by the

citizen or lawful permanent resident spouse, must have been

perpetrated against the self-petitioner or the self-petitioner's

child, and must have taken place during the self-petitioner's

marriage to the abuser."  Id.

IV

In Count I of the complaint, Concha asserts that the

USCIS's denial of his Form I-360 self-petition violated the APA.

We focus our review on the AAO's decisions dismissing Concha's

appeal and denying Concha's motion for reconsideration and to

reopen, which constitute the final agency action on Concha's

petition.  5 U.S.C. § 704; see also Embassy of the Blessed

Kingdom of God for all Nations Church v. Attorney Gen. U.S.,

591 F. App'x 161, 165 (3d Cir. 2014).

To the extent that Concha challenges how the USCIS

credited or weighed evidence in determining that Concha was not

subjected to "extreme cruelty," we lack jurisdiction over his

claim.[2]  When acting on self-petitions for classification as an

---

2.  Concha does not assert that he was subjected to battery and
therefore the dispute before the USCIS, as well as before this
court, centers on whether Concha was subjected to "extreme
cruelty."  See 8 U.S.C. § 1154(a)(1)(A)(iii).

abused spouse under 8 U.S.C. § 1154(a)(i)(A)(iii), "[t]he determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Attorney General." 8 U.S.C. § 1154(a)(1)(J). Under the INA, courts lack jurisdiction over "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security."[3] 8 U.S.C. § 1252(a)(2)(B)(ii). Furthermore, under the APA judicial review is not available if: "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a).

Here, USCIS examined the evidence submitted by Concha, making determinations about what credit and weight to give such evidence. It ultimately found that the extramarital affair and lies perpetrated by Baez, while unkind and the cause of great distress to Concha, did not rise to the level of extreme cruelty required under the INA. We lack jurisdiction to overturn this determination to the extent that it is a factual finding.

We will, however, exercise jurisdiction over Count I of the complaint to the extent Concha asserts that defendants

3. The statute provides an exception, not relevant here, for decisions related to applications for asylum under 8 U.S.C. § 1158. See 8 U.S.C. § 1252(a)(2)(B)(ii).

"failed to properly interpret" the "extreme cruelty" requirement
under 8 U.S.C. § 1154(a)(1)(A)(iii).[4]  As stated above, the USCIS
interpreted its regulation defining "extreme cruelty," 8 C.F.R.
§ 204.2(c)(1)(vi), to exclude the adultery and lies described by
Concha.  Although non-inclusive, the regulation provides
protection for victims of acts of violence or threatened acts of
violence, which result or threaten to result in physical or
mental injury.  See 8 C.F.R. § 204.2(c)(1)(vi).  While the
regulation also provides protection for psychological or sexual
abuse, it includes as examples of this conduct rape,
molestation, incest, or forced prostitution.  Id.  Finally, the
regulation includes abusive actions that "may not initially
appear violent but that are a part of an overall pattern of
violence."  Id.

        Marital infidelity and lies are not expressly covered
by the regulation and are not similar to the types of conduct
enumerated in the regulation.  Moreover, nothing in the
regulation requires the USCIS to categorize acts as "extreme
cruelty" simply because they may cause mental injury such as
depression.  As discussed above, the intent of Congress in

---

4.  In the complaint Concha challenges the USCIS's
interpretation of 8 U.S.C. § 1154(a)(1)(A)(iv) and 8 U.S.C.
§ 1101(b)(1)(B).  Both of these statutes relate to children and
are not at issue in Concha's case.  We attribute these citations
to a scrivener's error and therefore will not address them.

passing VAWA was to protect victims of domestic violence.  As
one Court of Appeals has recognized, "[b]ecause every insult or
unhealthy interaction in a relationship does not rise to the
level of domestic violence, Congress required a showing of
extreme cruelty in order to ensure that [VAWA] protected against
the extreme concept of domestic violence, rather than mere
unkindness."  Hernandez v. Ashcroft, 345 F.3d 824, 840 (9th Cir.
2003) (internal citation omitted).  We conclude that USCIS's
interpretation of the regulation is not "arbitrary, capricious,
an abuse of discretion, or otherwise not in accordance with
law."  5 U.S.C. § 706(2)(A).

        Accordingly, to the extent Concha challenges the
USCIS's consideration of the evidence submitted to support his
Form I-360 self-petition, we will dismiss his claim for lack of
subject matter jurisdiction.  We otherwise will enter judgment
in favor of the defendants on Count I of the complaint.

                               V

        In Count II of the complaint, Concha requests that
this court enjoin removal proceedings currently pending against
him.  However, such a request may only be brought at the
conclusion of removal proceedings upon petition for judicial
review of a final order of removal.  See 8 U.S.C. §§ 1252(a)(5),
(b)(9).  Moreover, jurisdiction over a final order of removal is
limited to the appropriate Courts of Appeals.  8 U.S.C.

                             -12-

§ 1252(a)(5).  As a result, we lack subject matter jurisdiction to consider Concha's request.[5]  We therefore will dismiss Count II without prejudice to Concha's right to petition the Court of Appeals for review of any final order of removal.[6]

---

5.  We understand that the administrative law judge handling the removal proceedings has granted Concha a continuance pending resolution of this action.

6.  We do not express any opinion as to whether the Court of Appeals would, in fact, entertain such petition.  We note that in Johnson v. Attorney General of the U.S., our Court of Appeals held that it lacked jurisdiction to review an order denying an alien's application for cancellation of removal under 8 U.S.C. § 1229b(b)(2), which provides that the Attorney General may cancel removal in the case of alien who has been battered or subjected to extreme cruelty.  602 F.3d 508, 510-11 (3d Cir. 2010).